Good morning. May it please the court. Peter Behr is appearing on behalf of defendant appellant Eddie Paulino. Good morning, counsel. Good morning. We've raised four issues on appeal. First, that the trial court erred in denying our motion to suppress on finding of exigent circumstances. Second, that the trial court erred in denying our motions for acquittal. Third, that the trial court erred in denying our motion for a new trial. And finally, that the trial court erred when it sentenced Mr. Paulino to 10 years in jail based upon a drug quantity of 50 grams or more net weight of methamphetamine hydrochloride. Was there any particular issue the court wanted me to address, or should I just go issue by issue? Just go. All right. With respect to the court's errors regarding the suppression motions, what we had here was a case where agents approached a private residence. They were not aware of whether or not the defendant was present in the residence. They'd been tracking a package. They were not aware of whether or not the package was in the residence. I thought they followed these guys. They did. They followed them and they pulled them to the driveway? The agents followed. They didn't maintain 100% visual surveillance. They came to a dead end. They didn't see where the defendants had gone. Where the agents had parked their vehicle. What they saw was a vehicle pulling to the driveway, but they then didn't see where they actually went. If the record reflects that, I'll stand corrected. I do not believe the record reflects that. I believe what the record shows is that they attempted to follow the vehicles. They stopped at a dead end. They didn't see where the vehicles had gone because it was blocked by foliage. Then they were notified through the bird dog sensor that the package had been breached. They didn't know where the package had been breached. The beeper did not identify the location of where the package had been breached. And agents approached a private residence without a warrant, without consent. But didn't they see the car at that point in the driveway? They did. They did. They saw two vehicles parked. How is there a fair probability that there were drugs in the house? I mean, at least they had the right place. Well, on the record, the testimony was they didn't know if the defendants were in the house. They didn't know if the package was in the house. Again, the sensor did not indicate where the package had been breached. And they approached the residence approximately one minute after it had been breached and lied three times by saying that they had a search warrant and busted into the house and then conducted not one but three searches, a preliminary search, a secondary search, and then a third search. And no warrant, no consent. And the – And when did they locate the drugs? Or I guess it was a substitute for the drugs. This was sham. They had done a controlled delivery of a package. And when did they locate the contents of the delivery? And which search? They never found it. What they found when they came in during the first search was my client, at the threshold of the bathroom, they claimed that they heard the toilet refilling, so the inference being that it had been flushed. They did find that. What was it? The packaging. No, on the fingertips. They later on. They did find flu spray on my client's hands. Flu spray, that's it. However, if the court had granted our suppression motion, which it should have, that evidence would never have come in, nor would the packaging, nor would the position of my client. You said they did a first search, a second, and a third. The judge did suppress. What was it, the results of the second and third search? Correct. Correct. Portions of it, not all of it. So the second and third really are not relevant to this one. After the signal went off and they knew that drugs were or had been drugs, the package had been breached, as you say, in a house, and they saw the car parked in the driveway of this house, and they came to the door, that search was not suppressed. Correct. And that was a warrantless search. And they said to the people inside, we have a warrant, and that wasn't true. Correct. They said it three times, and that wasn't true. And they also entered simultaneously with knocking. So is your argument that there wasn't exigent circumstances? Correct. Correct. In order to find exigent circumstances, the police, number one, have to be acting in good faith. They have to reasonably believe under the totality of circumstances that evidence will eminently be destroyed. Now, in this case, when you don't know where the defendants are, and you don't know where the package is. They didn't have to know in fact. Correct. I understand. I mean, there has to be a reasonable belief, and they have to be acting in good faith. When you go to a residence where you don't know where the defendants are, you don't know where the package is, and you lie. You don't think they had a reasonable belief that the defendants were inside that house? I think they just wanted to do what they wanted to do, and they didn't have a warrant. I know, too. I'm sure they wanted to go. What they wanted to do was go find those defendants opening the package, or with the open package. I really think, Your Honor, that the exigent circumstances argument that they raised during motion arguments was an afterthought. They knew they knew. No afterthought or not. Here it is. Yes. That being the case, though, I would submit that still they haven't done. The court's finding of exigent circumstances was an error, and really the facts on record in this case, again, where you have, I mean, really, the only evidence really is that the cars were parked in front of the house. This case is distinguishable from the ones that the court relied upon in its decision, the El Mino case. In that case, you had a defendant appearing at the door. You had to worry about a tip-off. You had to worry. In this case, you didn't even know if the defendants were in the house. They went barging into a private residence. That's where the, I mean, this circuit has recognized that nowhere is the protective power of the Fourth Amendment stronger than when you deal with a private residence, especially in this day and age. So what about the beeper? I mean, two other circuits have held that that's sufficient. McGregor and Yukimoto, I guess is how you pronounce that, are the 6th and the 11th. I gather you disagree with those cases. Well, I think the facts are just distinguishable. In particular, and I keep bringing this up, the agents did not even know if the defendants were in the house. They didn't know if the package was in the house, whereas in McGregor, I believe, and I'll stand corrected, I believe that they did know where the defendant was when the package was breached. But really, so if we prevail on the suppression issue, really, my client wins the case. But even beyond that point, when we did go to trial, what was at issue here was a specific drug quantity of 109.5 grams. This was in count four. It was a specific drug quantity. No other quantity was mentioned in count four, and that's the count that my client was convicted of. And as to that, the government agreed on the record, in fact, asserted that in order to find the defendant guilty, they would have to prove beyond a reasonable doubt to the jury the specific drug quantity of 109.5 grams net weight. How about if we're 110? Well, it's approximate. It's an approximate. Well, of course, there were 200 that they actually were in possession of. It didn't say at least, did it? It said approximately 109.5. It did, and there was no 50-gram threshold. They were operating under a theory of a 50-gram threshold. They specifically pled 109.5 grams, and it was an approximate. So in this case, in contrast to, for example, Toliver and Thomas and applying the Apprendi rule, the government made this an essential element, as did the court. And the prosecutor. But that doesn't make any difference, does it? The fact that the prosecutor may have made a mistake and stood up and said, well, this is an element that you have to find. I mean, where does that get you? Well, I think that, well, we have- Well, under the statute, they only had to prove the statutory violation, which doesn't require a specific amount. Well, the jury was- The whole purpose of requiring the jury to make a finding on the amount or type of drug is to satisfy Apprendi. In our case, Buckland, where we said that the type and quantity is an equivalent- Right, I understand. Like an element, like a windship element, but it's not really. And then Toliver, we said, all that happens if the government fails to meet its burden of proof is that the defendant gets the benefit of a lower sentence. Which didn't happen in this case. However, I would say that this case was distinguishable insofar as both the government and the court specifically stated on the record and instructed the jury that the government had to prove, as an essential element of the offense of count four, that specific amount of 109.5 grams. The jury was so instructed, and the court subsequently found in our acquittal motion that there was no way that it is an almost certainty that my client was unaware that the package contained 109.5 grams of methamphetamine hydrochloride, and that no rational juror could have found so. So taking that finding and applying it to what the court presented and instruction to the jury as an essential element, if they didn't prove that, then what did they prove? So the court erred in denying our acquittal motion, and then at sentencing, the court finding that 109.5 grams had not been proven, and 50 grams not being cited as a threshold for count four, what did the government prove? And we would submit that the government failed to prove its case because it itself said that it had to prove the 109.5 grams, and no other amount was ever proven at trial. Moving on beyond that... Is it your argument that he's entitled to acquittal? Absolutely. Okay. And moving forward beyond that, the court should have granted our motion for a new trial even if it didn't grant our motion for acquittal, and when it denied our motion for a new trial, the court applied. When you look at the opinion, six pages were devoted from the court to the acquittal issue. The new trial issue was nine lines, and the court, although it cited the rule regarding new trials, did not apply the standards for new trials when it issued its opinion. And as this court knows, the standards are much different. The court does not have to draw inferences. It does not need to view the evidence in the light most favorable to the government. Instead, the court can weigh the evidence on its own, and it can make its own findings regarding evidence. So this circuit has determined that when the court fails to apply the correct evidentiary standard, that that's the basis for a new trial. Rather, if the court denies it, the court errors in failing to grant a new trial. New trials should have been granted, number one, because of insufficiency of evidence on the drug quantity, and number two, because of the error regarding the drug quantity, and also applying the wrong standard. I would also note that the government, during the trial proceedings, noted, this is in Excerpt of the Record 3, page 611, what happens if they don't prove the specific amount? The defendant gets sentenced to five grams or less. That's what the government said. I agree with them. We argued at sentencing it should have been less than five grams. So the court erred when it sentenced the defendant to a 50-gram threshold. If I may reserve the balance. Thank you, Your Honor. May it please the Court, good morning. Karen Johnson for the United States. I have to apologize, Your Honor. I have a hearing problem, and I need the court hearing enhancements, which apparently do not work in this courtroom. And so my problem will be solved if you have no questions of me. Otherwise, if you could please speak into the microphone. Counsel, I think the issue has been clearly briefed. There's clearly issues and circumstances. When the cars have been followed, it was 100 percent surveillance by various officers all the way down. The cars were parked in front of the defendant's residence. The breaching device had gone off. What, they lost sight of them at some point? No. The evidence, if I understand it, is that one officer did not follow them all the way. You had a series of officers. And between the rotating surveillance, they did have surveillance all the way down and saw them pull into the driveway. That's my recollection of the testimony. But one officer, and Guam is so small, one officer is always burned when they try to follow a defendant. They have to have a series of people or they're made very quickly. The 109 grams was arrogant hubris on my part. The case was, from the government's viewpoint, so good. We had money laundering counts where thousands of dollars were being sent from the defendant to his brother in California. The testimony was the defendant was the one ordering. You would think that he would know what he was ordering. And when counsel said it has to be the exact amount, I said, okay, we'll prove the exact amount, which, of course, was a higher burden. And in retrospect, it's a foolish thing to do. We should have, of course, asked for the jury to return a verdict of more than 50 or more grams because that is the legal standard. So what's the consequence of you saying, yes, the jury has to find whether it's 109 grams? Well, I think for guidelines purposes, it clearly establishes the exact amount. The jury found that amount, Your Honor, which necessarily is above the 50 grams. And the courts accordingly made the right decision when it sentenced to above 100 grams. Was that in the verdict form by the jury? I'm sorry? Was the amount in the verdict form? Yes. The judge, the instruction was we had to prove that amount, and, of course, approximately. And the jury answered yes to that amount in the verdict form? Well, the jury convicted him of that count, and the instructions had that amount in that account. Right, but it wasn't. So because the amount was pled in the account, we did not request a special verdict form because the amount was specifically pled. That's very dicey on your part. I'm sorry? I mean, that's pretty dicey. It was foolish hubris, if I'm pronouncing it correctly. Well, call it hubris or what, but... It was dicey. Isn't it right, though? Isn't it correct? I'm not sketchy. You're sketchy. It's rather sketchy. We should have... You don't have to do that. No. We should have simply asked for more than 50 grams. Because the quantity only goes to the sentence. Well, the quantity goes... Under Apprendi and Buckner. The quantity goes to the sentence. In this case, of course, you've got a mandatory minimum of 120 months, which I think is supported by the evidence, because the evidence was that he was ordering between 3 and 4 ounces, which is about between 84 and 112 grams, every package that was coming in. That was the undisputed testimony. But that wouldn't have added up to 109, would it? I'm sorry? Would that evidence have supported 109? Yes, because it is between 84 and 112. And that was the testimony, between 3 to 4 ounces every package. And he was ordering it. So there's circumstantial evidence to support the jury's general verdict, guilty on count one or whatever it was. Yes, Your Honor. There was a testimony of Baba Salas, who would take the packages, they go down to the defendant's residence, and they would divide them 50-50, and then each one would sell their half of the package. I have some trouble with the notion on exigent circumstances, with the idea that the government can put a beeper in a package and then put it in a house and then say, well, now it's gone off, exigent circumstances allow us to go in. And I realize that there are the two other circuit cases, but why isn't that a situation where the government is creating the exigency? Because it goes to a larger question of trying to determine for whom the drugs were ultimately met. We get a search warrant, of course, to put the beeper in the package. But once it's picked up at the post office, agents do not know where it's going to go. They had, I think, an anticipatory warrant for the residence of Baba Salas. It didn't go there. Instead, it was picked up by the defendant from Mr. Salas. They go down to the defendant's place. That isn't necessarily the end of it. We've had many cases, Your Honor, where, in fact, there is a third person, and the person who picks it up and who takes it to his residence is not going to open it. He is going to hold it for that third person to come. Eventually, if the package is taken elsewhere, they need to be able to follow it to determine where, ultimately, it is going. Once you get there, once the package has arrived at the place, then don't you think the normal rules apply? You can get a search warrant at that point if you have time. But the fact that the beeper goes off is something that the government creates. Go ahead. The beeper says it has been opened. To simply pick up a package does not advance the government's case. For example, I think it was Mr. Salas's sister-in-law who picked up the package. She did not know what was in it. The fact that one possesses such a package is no proof that you know what is in it, especially on Guam where you have post office boxes where seven or eight individuals will share one box. It is not enough for someone to be in possession. It is not enough for them to take it into their residence. We need to know who is opening it and when it is opened. Before then, there is no movement on the part of the agents because we don't know where that package is ultimately going to go or if another person is going to come and pick it up. I understand your practical concerns, but in terms of constitutional concerns, it is not an exigency that is created by the defendants. It is an exigency that is created by the government. True. It is an exigency that is created by the defendant in the sense that he has opened the package, which is some evidence that, in fact, it actually was intended for him and that he knew that this was packaged and he knew what was in it. There is no other way that the agents have found, the government has found, to determine who is responsible for the package, who has knowledge of what the package is. Well, in bank-to-bank situations, they handle it pretty effectively. They have dye that explodes out once you open the package. Well, it's... So the package is open, you get a search warrant. Go ahead. For the rest, I think the district court's rulings were accurate and supported by the facts, and the sentence conviction should be sustained. Thank you, counsel. We didn't ask too many questions. Thank you. I appreciate that. In addressing the created exigency issue, I would submit that when the government proceeds in this way, they are creating an exigency that does not otherwise exist. And by placing the beeper into a package that they know will go into a residence or have a reasonable probability of belief that it will, they're essentially bypassing the Fourth Amendment in its entirety. I thought they got a warrant for... What happened was they got an anticipatory search warrant, which I argued against and which the government agreed was so flawed that that wasn't even considered. They obtained a search warrant to search, to open the box. Correct. Correct. And to put the beeper in. Correct. But there was even another warrant. That was not considered by the court in our suppression motion. So they had to pursue it to the warrant when they put the beeper in the package and sealed it back up and put the wire around it or whatever they did. That's correct. There's nothing improper about that, about doing that. Well, insofar as you know that that's going to go into a residence and you're going to not have a warrant for that residence and use that as a pretext to... When they obtained the warrant, did they tell the magistrate judge that? Did they say we're doing this because we think it might be going to somebody's residence, that somebody might open it? The purpose of that warrant, Your Honor, was not to enter a residence. The purpose of that warrant was to monitor the signal, to open the package, insert the beeper, and then monitor the signal not to go into any residence. So they didn't have a warrant to go into the residence. You said they obtained, or counsel for the government said they obtained an anticipatory warrant for a particular residence? That was a separate issue. Yes, there was an anticipatory search warrant that said that they can go into this co-defendant Baba Salas' house or any other place where the package is opened, which essentially allowed them to go into any residence. We argue that that was overly broad. The government agreed and the court also agreed. That wasn't even considered. I would say that the verdict in this case contradicted the court's specific finding that there was no way – oh, let me just correct the record. My understanding, my recollection is the verdict form did not state the specific drug amount. That's what she said. That's what counsel for the government said. Okay, so we're in agreement. It did not say the amount. Right. I think her argument was that they were instructed properly and they convicted on the count. Therefore, they must have made – necessarily made the finding. That's the way I understood her. Right. But the finding is contradictory to the judge's specific finding that there's no way a rational juror could have found that specific amount. So what does that leave us with? Well, there's all this – there's circumstantial evidence in the record, isn't there, that would support that amount? Well, yes. I mean, if the jury could believe this Mr. Salas, why wouldn't that be sufficient? Well, Mr. Salas also testified to 10-gram shipments. So the jury – so what – first of all, their theory is 109.5 grams. If they don't prove that as the court instructed them and as the government argued they had to prove that and the court – Well, they don't have to prove it with direct evidence. I know that there's 109 grams in this. Right, but what about – They can present circumstantial evidence. Right. I understand that. That's rational and believable and the jury can believe it. But what about the court's finding that no rational juror could have believed that he knew it was 109.5 grams? Why don't the judge also went on to mention the notion of circumstantial evidence as well would support that. But that was based upon her sentence on a 50-gram threshold, which in this case that fourth charge did not have a 50-gram threshold. The judge thought that she was constrained a sentence into 10 years because there was a 50-gram threshold under the statute pledged, which there was not. Count Ford did not have a 50-gram threshold. It was silent except for the specific amount of 109.5 grams. If they don't prove that, then what is the amount? Did you try this case, by the way? I did. And so there was evidence during trial regarding 10-gram shipments, 20-gram shipments. Let me correct one other part of the record. It wasn't my client who ordered the shipments. It was the co-defendant, Solace, who ordered the shipments, not my client. So the idea that my client knew what he was getting was not established during the trial, nor is it established in the record. I would also like to correct, there was not 100% visual surveillance of the defendants as they drove to the residence, and I think the record will show that, too. I think the court really erred in denying our motion for new trial because it applied the wrong standard. I think we're really right on the acquittal when the court makes that specific finding on drug quantity, and I'm fully aware of this circuit's holdings in Tolliver and Thomas and the Apprendi rule. And the suppression was just, the decision was just error. Finally, the sentence of 10 years based upon a 50-gram threshold, that's not supported by the record. They didn't prove the 109.5. What is the amount? The government indicated on the record in the excerpt I've earlier said, it's five grams, less than five grams. That's what we argued at sentencing, and the court made a 50-gram finding, and I'm not sure from where. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Reinhardt, Thomas, Paez